1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 SHALAMON DUKE,

Case No. 19-cv-06327-PJH
8            Plaintiff,

9     v.

**ORDER GRANTING IN PART AND**
**DENYING IN PART DEFENDANTS'**
10 CITY COLLEGE OF SAN FRANCISCO,             **MOTION TO DISMISS**
et al.,
11                                            Re: Dkt. No. 21
            Defendants.
12

13

14        Defendants San Francisco Community College District ("the District" or "CCSF")

15 and Chancellor Mark William Rocha's motion to dismiss came on for hearing before this

16 court on January 15, 2020. Plaintiff Dr. Shalamon Duke appeared through his counsel,

17 Don Lancaster. Defendants appeared through their counsel, Damon Thurston. Having

18 read the papers filed by the parties and carefully considered their arguments and the

19 relevant legal authority, and good cause appearing, the court hereby rules as follows, for

20 the reasons stated at the hearing and for the following reasons.

21                                 **BACKGROUND**

22        On August 26, 2019, plaintiff filed a complaint against defendants CCSF, Rocha,

23 and Does 1–10 in the Superior Court of the State of California, County of San Francisco.

24 Compl., Dkt. 1, Ex. A. That complaint asserted 14 causes of action. On October 3, 2019,

25 defendants removed this action to this court. Dkt. 1. On October 31, 2019, Duke filed a

26 Motion to Remand. Dkt. 15. On November 14, 2019, defendants filed an opposition to

27 that motion. Dkt. 18. On November 22, 2019, plaintiff filed a First Amended Complaint

28 ("FAC," Dkt. 19), asserting the same 14 causes of action: (1) 42 U.S.C. § 1983 ("§ 1983")

(alleged against CCSF, Rocha, and Does); (2) 29 U.S.C. § 206 ("Equal Pay Act") (alleged against CCSF and Does); (3) 42 U.S.C. § 1981 ("§ 1981") (alleged against CCSF, Rocha, and Does); (4) 29 U.S.C. §§ 621–34 ("ADEA") (alleged against CCSF and Does); (5) 42 U.S.C. § 2000 ("Title VII") (alleged against CCSF, Rocha, and Does); (6) 29 U.S.C. § 2615 ("FMLA") (alleged against CCSF, Rocha, and Does); (7) Cal. Govt. Code § 12940(a) ("FEHA Discrimination") (alleged against CCSF, Rocha, and Does); (8) Cal. Govt. Code § 12940(h) ("FEHA Retaliation") (alleged against CCSF, Rocha, and Does); (9) Cal. Govt. Code § 12940(h) ("FEHA Retaliation") (alleged against CCSF, Rocha, and Does); (10) breach of contract (alleged against CCSF and Does); (11) negligent infliction of emotional distress ("NIED") (alleged against CCSF, Rocha, and Does); (12) Cal. Govt. Code § 54957 (alleged against CCSF and Does); (13) Cal. Civ. Code § 51 ("Unruh Act") (alleged against CCSF and Does); and (14) intentional infliction of emotional distress ("IIED") (alleged against CCSF, Rocha, and Does).

Duke is an African American educator who served as Associate Vice Chancellor of Student Development at CCSF beginning in July 2018.[1]  FAC ¶¶ 4, 14.  He was paid $172,184.67, and a "Latina counterpart" hired around the same time earned $193,152.18.  Id. ¶ 14.

On December 6, 2018, a civil complaint was filed against Duke alleging that he sexually harassed someone while working at a former employer—a school within Los Angeles Community College District.  Id. ¶ 15.  On December 8, 2018, CCSF placed Duke on administrative leave.  Id. ¶ 20.  On December 10, 2019, CCSF asked for Duke's resignation, and he was told that Rocha would move to terminate him.  Id.

On December 11, 2018, CCSF sent a notice to Duke that he was formally placed on Administrative Leave, and on the same date Rocha sent an email to the CCSF community stating that Duke had been "separated" from CCSF and would "not return to his duties."  Id. ¶ 21.  On December 14, 2018, CCSF provided notice to Duke that it

---

[1] The well-pled allegations of the complaint are recounted and taken as true for the purposes of this motion to dismiss.

1    intended to terminate Duke's employment because Duke lacked judgment and good

2    sense by failing to notify CCSF that a complaint was pending. Id. ¶ 23. However, no

3    complaint was pending when Duke assumed his position at CCSF. Id.

4    At plaintiff's request, a pre-disciplinary "Skelly hearing" was held on January 9,

5    2019.[2] Id. ¶¶ 25–26. Duke alleges that the hearing was deficient. Id. ¶ 27. A CCSF

6    board meeting was held on January 24th, 2019, and the Board of Trustees unanimously

7    voted to terminate Duke's employment. Id. ¶ 28. On January 25, 2019, Rocha sent

8    plaintiff notice of his termination. Id. ¶ 29.

9    Prior to CCSF's termination of Duke, he had requested leave for the birth of his

10   daughter, which had been granted. Id. ¶ 30. However, he was terminated shortly before

11   he was scheduled to take his leave. Id. On June 14, 2019, Duke sent a California

12   Government Tort Claim to CCSF, to which CCSF did not respond. Id. ¶ 31. On July 2,

13   2019, Duke filed a complaint with the California Department of Fair Employment and

14   Housing. Id. ¶ 32. Duke subsequently received right-to-sue letters. Id.

**DISCUSSION**

16   **A.    Legal Standard**

17   A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

18   alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003).

19   Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short

20   and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ.

21   P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a

22   cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal

24   [2] The parties and materials submitted with the FAC interchangeably refer to a pre-
     termination meeting attended by plaintiff and a representative of the Board (along with

25   plaintiff's counsel, telephonically, and a facilitator) as the "Skelly hearing" and the "Skelly
     meeting." Although the nomenclature is certainly not determinative, a potential for

26   confusion arises given that various of the parties' arguments depend upon whether
     plaintiff was afforded a "hearing," and the characteristics of any such hearing. This court

27   refers to that January 9 meeting as the "Skelly hearing" simply because that is a familiar
     turn of phrase following Skelly v. State Personnel Board, 15 Cal. 3d 194 (1975); but the

28   court's adoption of that descriptor should not be confused with any substantive evaluation
     of the characteristics of the particular meeting at issue.

theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). If dismissal is warranted, it is generally without prejudice, "unless it is clear . . . that the complaint could not be saved by any amendment." In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005). "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment." Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008).

Review is generally limited to the contents of the complaint, although the court can also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999)); see also Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) ("a court can consider a document on which the complaint relies if the document is central to the plaintiff's claim, and no party questions the authenticity of the document"). The court may also consider matters that are properly the subject of judicial notice (Lee v. City of L.A., 250 F.3d 668, 688–89 (9th Cir. 2001)), exhibits attached to the complaint (Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989)), and documents referenced extensively in the complaint and documents that form the basis of the plaintiff's claims (No. 84 Emp'r-

Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003)).

**B.    Analysis**

First, defendants argue that this court lacks subject-matter jurisdiction over the action because plaintiff was required to file a writ of mandamus, rather than bring this action.  Second, defendants move to dismiss each of plaintiff's fourteen causes of action for failure to state a claim upon which relief can be granted.  Third, defendants move to strike portions of the FAC.

**1.    Subject-matter Jurisdiction**

Defendants argue that Duke was required to file a writ of mandamus[3] to challenge his termination, rather than file this civil action.  Plaintiff argues that the decision to terminate him did not satisfy the procedural elements that would compel him to seek a writ.  At the hearing, defendants declined to spend any of their time addressing the argument.

Defendants present this as a jurisdictional issue, but the underlying preclusive mechanism that their argument invokes would be that the state actor's decision "trigger[s] res judicata and collateral estoppel effect"—not a challenge to this court's jurisdiction over the action.  Ahmadi-Kashani v. Regents of Univ. of California, 159 Cal. App. 4th 449, 457 (2008); accord Tan v. Univ. of CA San Francisco, Case No. 06-cv-04697-TEH, 2007 WL 963222, at *2 (N.D. Cal. Mar. 29, 2007) ("In essence, this doctrine is a 'species of res judicata' and collateral estoppel.") (quoting Knickerbocker v. City of Stockton, 199 Cal. App. 3d 235, 243–44 (1988)).

Turning to that inquiry, the court beings by noting that because plaintiff's "claim is governed by the FEHA, []he was not obligated to exhaust any available 'administrative remedy,' and could have proceeded directly with a claim to the Department of Fair Employment and Housing, and then to the courts." Ahmadi-Kashani, 159 Cal. App. 4th at

---

[3] "Writ of mandamus," "writ of mandate," and "administrate mandate" all carry the same meaning in the context of defendants' motion and are used interchangeably.

456; accord McDonald v. Antelope Valley Cmty. Coll. Dist., 45 Cal. 4th 88, 113 (2008) ("initiation and completion of internal administrative proceedings like the one here is not a condition precedent to the filing of a FEHA claim"). However, defendants' argument rests on the principle that when one participates in "a full adversarial hearing" satisfying the procedures required to make it a quasi-judicial process under California law, such a hearing "trigger[s] res judicata and collateral estoppel effect[.]" Ahmadi-Kashani, 159 Cal. App. 4th at 457. In short, a plaintiff must make his choice of forum, and he might not be permitted to abandon his chosen route of adjudication in favor of another midway through the proceedings.

This either/or principle is "founded on the rationale that a plaintiff is entitled to only one opportunity to try her claim. If she takes that opportunity in the context of an administrative process, she cannot merely ignore an adverse result and ask for a 'do-over' in court." Id. at 458. Accordingly, "[j]udicial exhaustion . . . . may arise when a party initiates and takes to decision an administrative process—whether or not the party was required, as a matter of administrative exhaustion, to even begin the administrative process in the first place. Once a decision has been issued, provided that decision is of a sufficiently judicial character to support collateral estoppel, respect for the administrative decisionmaking process requires that the prospective plaintiff continue that process to completion, including exhausting any available judicial avenues for reversal of adverse findings. Failure to do so will result in any quasi-judicial administrative findings achieving binding, preclusive effect and may bar further relief on the same claims." McDonald, 45 Cal. 4th at 113 (citation omitted).

The court therefore inquires whether plaintiff's termination must have been challenged with an administrative mandate, rather than though this action. "[A]dministrative mandate is available only if the decision resulted from a proceeding in which by law: 1) a hearing is required to be given, 2) evidence is required to be taken, and 3) discretion in the determination of facts is vested in the agency.'" McGill v. Regents of Univ. of California, 44 Cal. App. 4th 1776, 1785 (1996) (internal quotation

marks omitted).

The first prong raises the question as to what constitutes a "hearing." A satisfactory hearing must be "intended to afford [plaintiff] an opportunity to *prove* her case," rather than merely as "an opportunity for the parties to discuss information and contentions relative to the grievance." Ahmadi-Kashani, 159 Cal. App. 4th at 458 (internal quotation marks omitted). Certain "judicial characteristics" are "essential to according administrative findings collateral estoppel effect, including but not limited to testimony under oath, the opportunity to call witnesses and introduce evidence, and a formal record of the hearing." McDonald, 45 Cal. 4th at 113. Even when the plaintiff is "entitled to be accompanied by a representative, the meeting" is not satisfactory where it includes "no provisions for sworn testimony; no opportunity for cross-examination, for the questioning of third-party witnesses, or for the admission or consideration of other evidence" including the questioning of primary witnesses. Ahmadi-Kashani, 159 Cal. App. 4th at 458.

Here, there is no indication that a hearing was required to be given by law. The District's own statements confirm that the pre-termination Skelly hearing was "a matter of courtesy and not of legal right" (FAC, Ex. 17), and they explicitly noted that it was "not clear whether" the Board of Directors meeting at which the decision to terminate plaintiff would be a "hearing" at all (FAC, Ex. 16). Accordingly, plaintiff was not required to seek an administrative mandate, and defendants' argument—whether framed in terms of this court's jurisdiction or plaintiff's duty to exhaust administrative remedies—fails.[4]

### 2. Whether Plaintiff's FAC Adequately Pleads Each Claim

#### a. First Claim: § 1983

---

[4] The argument also fails under the second prong outlined in McGill, which assesses the evidentiary features of the hearing. Here, there is no indication that evidence was required to be taken by law. In fact, there is not even any indication that evidence outside of plaintiff's own (unsworn) statements was permitted, much less required. See, e.g., FAC, Ex. 15 (Skelly hearing report); FAC, Ex. 7 (notice advising plaintiff that a "Skelly hearing" would at some point ensue, and that the hearing would allow him (without mention of other witnesses) to "address management concerns").

1    Plaintiff appears to assert two theories of liability under 42 U.S.C. § 1983. First, he

2    argues that defendants violated the Equal Protection Clause of the Constitution. Second,

3    he argues that defendants violated the Due Process Clause of the Constitution.

4    With respect to the alleged equal protection violation, although plaintiff uses the

5    words "Equal Protection" occasionally, his briefing and FAC are entirely bereft of any

6    content explaining or supporting such a theory. Instead, the discussion of plaintiff's

7    § 1983 claim in the FAC and briefing all concern the Due Process Clause, as does

8    plaintiff's cited authority. Accordingly, plaintiff's first cause of action, to the extent it is

9    based on a theory that defendants violated the Equal Protection Clause of the

10   Constitution, is DISMISSED AS TO BOTH DEFENDANTS WITH LEAVE TO AMEND.

11   Plaintiff articulates his allegations and arguments regarding due process violations

12   more clearly. Plaintiff argues that both defendants denied him due process by

13   terminating him without an investigation and for reasons not permitted under California

14   Education Code § 87732. Defendants argue that plaintiff cannot argue that any

15   constitutionally-protected right was violated, given that the FAC confirms plaintiff was

16   provided a notice of intent to dismiss, a Skelly hearing, and a notice of dismissal. See

17   FAC ¶¶ 23, 25, 26, 29.

18   "To establish a § 1983 claim, a plaintiff must show that an individual acting under

19   the color of state law deprived him of a right, privilege, or immunity protected by the

20   United States Constitution or federal law. To establish a due process violation, a plaintiff

21   must show that he has a protected property interest under the Due Process Clause and

22   that he was deprived of the property without receiving the process that he was

23   constitutionally due." Levine v. City of Alameda, 525 F.3d 903, 905 (9th Cir. 2008)

24   (citation omitted).

25   A plaintiff can assert a claim under § 1983 for a due process violation if he was

26   denied "property interests in [his] employment without due process of law." Clements v.

27   Airport Auth. of Washoe Cty., 69 F.3d 321, 331 (9th Cir. 1995). "This Due Process

28   analysis involves a two-step process. First, we must determine whether the [plaintiff] had

a protected property interest in [his] continued employment.  Second, we must determine whether, in being deprived of this interest, [he] received all the process that was due."  Id. "[O]nce it is determined that the Due Process Clause applies [at the first step], the question remains what process is due [at the second step].  The answer to that question is not to be found in the [state] statute," but in the Due Process Clause of the Constitution.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) (internal quotation marks and citations omitted).

Regarding the first step, plaintiff "must show that [he] had a protected property interest in [his] job[].  We look to state law to determine whether a protected property interest exists."  Clements, 69 F.3d at 331; accord Cleveland Bd. of Educ., 470 U.S. at 538 ("Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law") (internal quotation marks omitted).  If he had such an interest, "the State could not deprive them of this property without due process."  Cleveland Bd. of Educ., 470 U.S. at 538.  A public employee entitled to retain his position during good behavior and who could not be dismissed except under enumerated circumstances has "property rights in continued employment."  Id. at 539.

Here, plaintiff alleges that his employment was governed by California Education Code § 87732.  Defendants do not dispute this; rather, they argue that plaintiff was terminated in accordance with that section.  That section provides that "No regular employee or academic employee shall be dismissed except for one or more of the following causes:" and provides an enumerated list of causes.  See Cal. Educ. Code § 87732.  Accordingly, the statute creates a property interest in plaintiff's continued employment.  See Cleveland Bd. of Educ., 470 U.S. at 538–40 (finding that a similar Ohio statute created a property interest in continued employment).

Regarding the second step, the court "must determine whether, in being deprived of this interest, [plaintiff] received all the process that was due."  Clements, 69 F.3d at 331.  The court looks to the Constitution to assess what process was due.  "It is well

9

settled that the root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest. Although the pre-termination hearing need not be elaborate, 'some kind of hearing' must be afforded the employee prior to termination.  The essential requirements of this pre-termination process are *notice* and *an opportunity to respond.*" <u>Clements</u>, 69 F.3d at 331–32 (internal quotation marks and citations omitted).  "[T]he pretermination 'hearing,' though necessary, need not be elaborate. . . .  [T]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.  In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." <u>Cleveland Bd. of Educ.</u>, 470 U.S. at 545 (internal quotation marks and citations omitted).  For example, "constitutional minima [are] satisfied where the employee had access to the material upon which the charge was based and could respond orally and in writing and present rebuttal affidavits." <u>Id.</u> at 542.

"[T]he pretermination hearing need not definitively resolve the propriety of the discharge.  It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.  The essential requirements of due process, and all that respondents seek or the Court of Appeals required, are notice and an opportunity to respond.  The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.  The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.  To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." <u>Cleveland Bd. of Educ.</u>, 470 U.S. at 545–46 (citations omitted).

Plaintiff argues that he was not afforded due process prior to being terminated.  He

alleges that he was placed on administrative leave on December 8, 2018. FAC ¶¶ 20–21. On December 12, he was given notice of a December 13 board meeting concerning his employment. Id. ¶¶ 22–23. The day after the board meeting, he was notified of CCSF's intent to terminate his employment, and its justification for doing so. Id. ¶ 23. On December 19, Duke requested a pre-disciplinary hearing. Id. ¶ 25. That Skelly hearing was held on January 9, 2019. Id. ¶¶ 25–26. Plaintiff attended in person, and his attorney attended telephonically. FAC, Ex. 15 at 1. Duke was afforded the opportunity to present reasons why he should not be terminated at the hearing. Id.; see also FAC ¶ 26. On January 23, Duke received notice of a board meeting held on January 24, at which the Board of Trustees unanimously voted to terminate his employment. FAC ¶ 28.

The allegations in plaintiff's pleading make clear that the Skelly hearing satisfied defendants' pre-termination obligations under the Due Process Clause. Plaintiff was given written notice of the complaints against him, and he was given the opportunity to attend (and did attend) a meeting during which he was permitted to respond to those complaints.[5]

Given that plaintiff's due process claim challenges the process he was afforded prior to his termination, that claim must be DISMISSED for the reasons explained above. Rather than alleging a due process violation, plaintiff's pleadings have instead alleged facts demonstrating that the process he was afforded prior to his termination satisfied the Due Process Clause's requirements. Accordingly, his § 1983 claim based on the Due Process Clause is DISMISSED AS TO BOTH DEFENDANTS WITH PREJUDICE.

**b.    Second Claim: Equal Pay Act**

Duke alleges that defendants violated the Equal Pay Act because the District allegedly paid one other employee (a "Latina counterpart")—holding a position with similar responsibilities that was "comparable in scope of work"—more than plaintiff,

---

[5] Plaintiff alleges that "Duke had no opportunity to present evidence favorable to him" at the Skelly hearing (FAC ¶ 39), but that allegation does not comport with most other allegations in the complaint. See, e.g., FAC ¶ 26 & Exs. 7 (Skelly hearing would allow Duke to "address management concerns"), 15.

despite his having "more direct experience."  See FAC ¶¶ 53, 54, 56.

Defendants argue that plaintiff's complaint compares himself only to a single other employee, which as a matter of law fails to state a claim.  Plaintiff responds that alleging a single comparison employee is sufficient to state a claim.

"To make out a case under the Equal Pay Act, a plaintiff must prove that an employer is paying different wages to employees of the opposite sex for equal work.  The jobs held by employees of opposite sexes need not be identical, but they must be 'substantially equal.'"  Hein v. Oregon Coll. of Educ., 718 F.2d 910, 913 (9th Cir. 1983) (citation omitted).  "[T]he proper test for establishing a prima facie case in a professional setting such as that of a college is whether the plaintiff is receiving lower wages than the average of wages paid to all employees of the opposite sex performing substantially equal work and similarly situated with respect to any other factors, such as seniority, that affect the wage scale."  Id. at 916.  So, when evaluating the merits of the claim, the average of all similar employees of the opposite gender is necessary to determine liability.  When there is only a single opposite-gender employee performing similar work, it is appropriate to compare the plaintiff's pay against that single employee.  Id. at 918 (noting, however, that the Ninth Circuit looks "critically upon the use of a single comparator to make out a prima facie case").

Thus, contrary to defendants' position, comparing oneself to a single other employee is appropriate when there is only a single comparable employee of the opposite gender.  Although the FAC does not include such allegations, at the hearing plaintiff's counsel argued that the District in fact employs only a single female employee who performs substantially equal work and is similarly situated to plaintiff.  Given plaintiff's counsel's representation at the hearing, plaintiff's Equal Pay Act claim is DISMISSED WITH LEAVE TO AMEND, for the limited purpose of alleging (if possible consistent with Rule 11), that the District employs only a single female employee who performs substantially equal work and is similarly situated with respect to other factors that affect the wage scale.

### c.    Third Claim:  § 1981

Plaintiff argues that he is entitled to bring a complaint under 42 U.S.C. § 1981 based on defendants breaching his employment contract, because his employment was formed by a contract pursuant to California Education Code Sections 72411 and 87470. He argues that a contract, in combination with those statutes, guaranteed him employment until June 30, 2020, unless he was terminated for reasons permitted by the statute.  By terminating him for reasons not specified in California Education Code § 87732, plaintiff alleges that defendants breached a contract.

As discussed above with respect to plaintiff's due process claim, plaintiff had a property interest in his employment that was created by statute—not a contractual right. California law is clear on this point.  E.g., Kim v. Regents of Univ. of California, 80 Cal. App. 4th 160, 164 (2000) ("In California public employment is held not by contract, but by statute. . . .  [O]ur Supreme Court has made it clear that civil service employees cannot state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing."); Miller v. State of California, 18 Cal. 3d 808, 813 (1977) ("[I]t is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law.").

Plaintiff claims that defendants terminated his employment improperly, not that they breached any provision requiring back-pay or other remuneration for work already performed.[6]  As such, plaintiff's claim is not based on a breach of contract under controlling California law.  This conclusion was clarified by the fact that, when asked at the hearing what allegation supports the existence of the contract underlying this claim, plaintiff referred the court only to the first exhibit to the FAC, which is a letter explaining

---

[6] "Pension rights, unlike tenure of civil service employment, are deferred compensation earned immediately upon the performance of services for a public employer and cannot be destroyed without impairing a contractual obligation."  Miller, 18 Cal. 3d at 814.

that plaintiff was appointed to his position pursuant to statute.  See FAC, Ex. 1.  Because

plaintiff does not have any contractual interest to enforce, his claim under 42 U.S.C.

§ 1981 is DISMISSED AS TO BOTH DEFENDANTS WITH PREJUDICE.

### d.      Fourth Claim:  Age Discrimination

The Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. ("ADEA"),

provides:

> It shall be unlawful for an employer--
>
> (1)  to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>
> (2)  to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
>
> (3)  to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623.

"The ADEA prohibits an employer from, among other things, 'discharging' an

employee who is over forty years of age 'because of' the employee's age." Sheppard v.

David Evans & Assoc., 694 F.3d 1045, 1049 (9th Cir. 2012) (quoting 29 U.S.C.

§§ 623(a)(1), 631(a)).  "To establish a prima facie case of discrimination, a plaintiff must

allege in her complaint that: (1) she was at least forty years old; (2) she was performing

her job satisfactorily; (3) discharged; and (4) 'either replaced by a substantially younger

employee with equal or inferior qualifications or discharged under circumstances

otherwise giving rise to an inference of age discrimination.'" Id.

"[A]n age difference of less than ten years, without more evidence, is insufficient to

make a prima facie case of age discrimination. . . .  [A]n age difference of less than ten

years creates a rebuttable presumption that the age difference is insubstantial. . . .  A

plaintiff who is not ten years or more older than his or her replacements can rebut the

presumption by producing additional evidence to show that the employer considered his

or her age to be significant.  The plaintiff can produce either direct or circumstantial evidence to show that the employer considered age to be a significant factor." France v. Johnson, 795 F.3d 1170, 1174 (9th Cir. 2015) (citation omitted).

Defendants argue that plaintiff failed to adequately allege that defendants replaced plaintiff's position with someone younger, much less someone 10 years younger.  Plaintiff argues that it is defendants' burden to show that the person who replaced Duke was not 10 years younger, and that his burden at the pleading stage is merely to "give notice of his claims." See Opp., Dkt. 26 at 15.

Plaintiff's FAC alleges that the District "discharged Dr. Duke and replaced him with a younger person to assume his responsibility.  Dr. Duke is informed, believes and thereon alleges that the individual who has assumed his duties is at least 10 years younger than him." FAC ¶ 77.  Plaintiff makes no other allegation indicating that defendants considered his age to be significant.  Plaintiff's claim therefore relies entirely on a presumption of discrimination based on the age of his replacement.  Yet, the allegations in plaintiff's FAC regarding his replacement are too conclusory to adequately allege that presumption.  Accordingly, plaintiff's fourth claim is DISMISSED WITH LEAVE TO AMEND, in order to allege facts supporting the allegation regarding plaintiff's replacement's age.

### e.    Fifth and Seventh Claims:  Discrimination

Duke alleges that he was discriminated against due to his race in violation of Title VII and FEHA.

To state a claim for race discrimination, plaintiff must establish four prima facie elements:  "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 355 (2000); see Fonseca v. Sysco Food Servs. of Arizona, Inc., 374 F.3d 840, 847 (9th Cir. 2004) (explaining elements of prima facie case of

15

discrimination under Title VII); Metoyer v. Chassman, 504 F.3d 919, 941 (9th Cir. 2007) ("California courts apply the Title VII framework to claims brought under FEHA."), abrogated on other grounds by Nat'l Assoc. of African Am.-Owned Media v. Charter Commc'ns, Inc., 915 F.3d 617 (9th Cir. 2019); see also Adetuyi v. City & Cty. of San Francisco, 63 F. Supp. 3d 1073, 1092 (N.D. Cal. 2014) (collecting cases).

Defendants argue that these claims fail because the complaint alleges no facts supporting any plausible nexus between Duke's termination and his sex, gender, color, or race. Cf. FAC ¶¶ 86–87, 102, 105. Duke's only plausible allegation regarding his termination is that defendants acted on the revelation of pending allegations against Duke—which is not cognizable under Title VII or FEHA. Regarding Rocha, defendants argue that supervisory employees are not subject to personal liability for allegedly discriminatory management decisions as a matter of law. Plaintiff argues that he expressly alleged that CCSF and Rocha discriminated against him based on race.

Here, there are no plausible, well-pled allegations that defendants acted because of plaintiff's sex, gender, color, or race—other than bare conclusory allegations from plaintiff. Plaintiff cites only to FAC ¶¶ 86–87 & 103–05, which are bare, conclusory allegations. The allegations' conclusory nature is even more pronounced in light of the fact that the parties agree on certain core facts surrounding defendants' articulated justification for terminating plaintiff—that he failed to disclose an investigation of misconduct with students undertaken by his previous employer prior to December 7, 2018. See, e.g., FAC ¶¶ 39, 86 (discrimination claim based on fact that defendants terminated Duke "based on allegations that were neither investigated nor within its jurisdiction"). Accordingly, plaintiff's fifth and seventh causes of action as alleged CCSF are DISMISSED WITH LEAVE TO AMEND. Plaintiff may amend his complaint to include well-pled allegations of discriminatory motive.

Regarding Roca, plaintiff's claim is DISMISSED WITH PREJUDICE. "In Reno v. Baird, 18 Cal. 4th 640, 663 (1998), the California Supreme Court held that supervisors could not be held liable under FEHA's general anti-discrimination provision." Scott v.

Solano Cty. Health & Soc. Servs. Dep't, 459 F. Supp. 2d 959, 965–66 (E.D. Cal. 2006) ("Based on the unambiguous language in Reno, the court must dismiss plaintiff's FEHA discrimination claims against" individuals); Reno v. Baird, 18 Cal. 4th 640, 643 (1998) (unlike harassment claims, "FEHA, like similar federal statutes, allows persons to sue and hold liable their employers, but not individuals" for discrimination); accord Janken v. GM Hughes Elecs., 46 Cal. App. 4th 55, 65 (1996) (liability for discrimination "is limited to the 'employer' only").

### f.      Sixth Claim:  FMLA

"To make out a prima facie case of FMLA interference, an employee must establish that (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." Escriba v. Foster Poultry Farms, Inc., 743 F.3d 1236, 1243 (9th Cir. 2014) (internal quotation marks omitted).

Defendants argue that plaintiff was not eligible for FMLA leave because he had not been employed for 12 months and for at least 1,250 hours of service during the previous 12-month period.  Plaintiff argues that defendants are liable under the statute—regardless of his eligibility for FMLA's protections—because the District approved his request for leave.

Regarding the first element, "[t]he FMLA entitles 'an eligible employee' to take family or medical leave for several enumerated reasons, including to care for a close relative.  The term 'eligible employee' means an employee who has been employed (i) for at least 12 months by the employer with respect to whom leave is requested.  That is, an employee is not eligible for family or medical leave until he or she has worked for an employer for 12 months." Sullivan v. Dollar Tree Stores, Inc., 623 F.3d 770, 780 (9th Cir. 2010) (internal quotation marks and citations omitted); 29 U.S.C. § 2611(2)(A) ("The term 'eligible employee' means an employee who has been employed—(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of

17

this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period.").

Duke alleges he was "appointed" by the District in July 2018 and was terminated in January 2019. FAC ¶¶ 14, 29. Because he alleges that he was not employed for at least 12 months, plaintiff was not eligible for FMLA leave, and his claim must fail. Accordingly, plaintiff's sixth claim is DISMISSED AS TO BOTH DEFENDANTS WITH PREJUDICE.

### h.    Eighth Claim:  FEHA Retaliation Based on Complaint for Equal Pay

"[I]n order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005).

Plaintiff argues that he complained about his pay and asked for an increase commensurate with comparable female employees. He argues that asking for pay equal to his female counterparts is a protected activity, and that he was terminated after doing so. Defendants argue that the temporal proximity between Duke's request for a raise and his firing is not sufficient to allege a causal link where, as here, there is an alternate explanation—he was the subject of a sensitive complaint at a community college where he used to work, and he failed to disclose that matter to CCSF until it became a formal lawsuit. See FAC ¶¶ 19, 27; see also RJN, Dkt. 21-1, Ex. A.

Evidence that plaintiff's termination followed soon after his alleged complaint about the legality of his pay is sufficient to allege a causal link supporting his intentional retaliation claim. See, e.g., Flait v. N. Am. Watch Corp., 3 Cal. App. 4th 467, 478 (1992) ("sufficient circumstantial evidence . . . that there is a causal link" where plaintiff "was terminated only a few months after" the protected activity); Santillan v. USA Waste of California, Inc., 853 F.3d 1035, 1047 (9th Cir. 2017) (plaintiff "established a nexus between his termination in July 2012, and his protected activity because USA Waste fired

him roughly two months after" the activity); <u>Thomas v. City of Beaverton</u>, 379 F.3d 802, 812 (9th Cir. 2004) ("The causal link between a protected activity and the alleged retaliatory action 'can be inferred from timing alone' when there is a close proximity between the two.").

As such, defendant's motion to dismiss plaintiff's eighth cause of action as alleged against CCSF is DENIED.

The claim as alleged against Rocha is DISMISSED WITH PREJUDICE.  "[T]he same rule applies to actions for retaliation that applies to actions for discrimination:  The employer, but not nonemployer individuals, may be held liable."  <u>Jones v. Lodge at Torrey Pines P'ship</u>, 42 Cal. 4th 1158, 1164 (2008) ("<u>Reno</u>'s rationale for not holding individuals personally liable for discrimination applies equally to retaliation.").

### i.    Ninth Claim:  FEHA Retaliation Based on Assertion of Right to Due Process

For this claim, Duke alleges an additional theory of liability based on the same substantive law as the eighth cause of action.  He asserts that he engaged in the protected activity of asserting his right to due process in being terminated.  FAC ¶ 117.

Plaintiff fails to adequately plead the first and fourth elements required to establish a prima facie case of retaliation under the FEHA—that plaintiff show he or she engaged in a 'protected activity,' and that that plaintiff show a causal link between the protected activity and the employer's action.  Plaintiff's FAC fails to provide any factual allegations that he "asserted his right to obtain due process in being terminated" prior to his termination, such that the protected activity could have plausibly led to his termination.  No such allegations are pled under the cause of action.  <u>See</u> FAC ¶¶ 115–120; <u>cf.</u> FAC ¶ 118 (alleging that he was terminated "[a]fter complaining about his pay," which would relate to the eighth cause of action).  The ninth cause of action also incorporates paragraphs 1–32 of the FAC, (<u>see</u> FAC ¶ 114).  Those paragraphs do not contain any allegations that Duke complained about any due process violations prior to his termination.  Of course, plaintiff has alleged due process violations through this action,

but a retaliation claim requires such complaints to proceed the allegedly-retaliatory action.

Because the court is not convinced that amendment would necessarily be futile, the ninth cause of action as alleged against CCSF is DISMISSED WITH LEAVE TO AMEND.

The claim as alleged against Rocha is DISMISSED WITH PREJUDICE. "[T]he same rule applies to actions for retaliation that applies to actions for discrimination: The employer, but not nonemployer individuals, may be held liable." Jones, 42 Cal. 4th at 1164 ("Reno's rationale for not holding individuals personally liable for discrimination applies equally to retaliation.").

### j.    Tenth Claim:  Breach of Contract

"In California public employment is held not by contract, but by statute. . . .  [O]ur Supreme Court has made it clear that civil service employees cannot state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing.  This same general principle of law applies to civil service and noncivil service public employees alike." Kim, 80 Cal. App. 4th at 164 (citations omitted); accord Miller, 18 Cal. 3d at 813–14 ("[I]t is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law.  Nor is any vested contractual right conferred on the public employee because he occupies a civil service position since it is equally well settled that the terms and conditions of civil service employment are fixed by statute and not by contract.  Indeed, the statutory provisions controlling the terms and conditions of civil service employment cannot be circumvented by purported contracts in conflict therewith.'") (citations and internal quotation marks omitted).[7]

---

[7] There is an exception irrelevant to the present action for "pension rights" which, "unlike tenure of civil service employment . . . are deferred compensation earned immediately

Although Duke's employment was held by statute—not contract—he now asserts a cause of action for breach of contract because defendants terminated his employment for reasons not permitted by statute.  <u>See</u> FAC ¶¶ 121–128.  But plaintiff cannot prevail on such a claim under California law, as he does not have a contractual right to continue in an employment relationship with CCSF.  Moreover, defendants sought clarification as to whether the alleged contract is written, oral, or implied, under Cal. Civ. Proc. Code § 430.10.  Plaintiff responded by identifying Exhibit 1 to the FAC as the alleged contract.  That exhibit only reinforces the correctness the above analysis—plaintiff was appointed pursuant to statute, not contract.

For the foregoing reasons, plaintiff's tenth claim is DISMISSED WITH PREJUDICE.

### k.     Eleventh Claim & Fourteenth Claims:  NIED and IIED

The eleventh and fourteenths claims allege that defendants negligently and intentionally, respectively, caused plaintiff severe emotional distress by terminating him.  <u>See</u> FAC ¶¶ 133, 152.

Defendants raise three primary arguments.

First, they argue that because the alleged conduct occurred at the worksite and in the "normal course of the employer-employee relationship . . . workers' compensation is plaintiffs' exclusive remedy for any injury that may have resulted."  <u>Miklosy v. Regents of University of California</u>, 44 Cal. 4th 876, 902 (2008).

In California, "[s]o long as the basic conditions of compensation are otherwise satisfied, and the employer's conduct neither contravenes fundamental public policy nor exceeds the risks inherent in the employment relationship, an employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation."  <u>Id.</u> at 902 (citations omitted).  Accordingly, when "alleged wrongful conduct . . . occurred at the worksite, in the normal course of the employer-employee

upon the performance of services for a public employer[.]"  <u>Miller</u>, 18 Cal. 3d at 814.

21

relationship, . . . workers' compensation is plaintiffs' exclusive remedy for any injury that may have resulted." Id. "The kinds of conduct at issue (e.g., discipline or criticism) are a normal part of the employment relationship." Id. (quoting Shoemaker v. Myers, 52 Cal. 3d 1, 25 (1990)). That includes "termination of a whistleblower employee." Id. "Even if such conduct may be characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions." Id.; accord Shoemaker, 52 Cal. 3d at 25.

However, the doctrine "does not prohibit all emotional distress causes of action against an employer, but only those based on conduct that is a normal risk of the employment relationship." Fretland v. Cty. of Humboldt, 69 Cal. App. 4th 1478, 1492 (1999). "[W]ork-related injury discrimination is not a normal risk of the compensation bargain" and therefore can support IIED and NIED claims. Id. That is because adverse employment actions based on FEHA violations contravene public policy, and thus are not subject to a workers' compensation remedy as the exclusive remedy. See Sheppard v. Freeman, 67 Cal. App. 4th 339, 344 (1998) ("an employee has an actionable claim only where the employer's conduct violates public policy").

Second, defendants argue that the Tort Claims Act abolished all common law or judicially declared forms of liability for public entities, except for such liability that arises from statutory or constitutional authority. See Cal. Gov. Code § 815(a). Defendants argue that Duke has not identified any statutory exception to the general rule of governmental immunity permitting Duke to proceed with either claim.

However, Duke has pled violations of duties contained in state statutes, including California Education Code § 87732. That statute allegedly sets out a duty specifying that CCSF can only fire plaintiff based on an enumerated list of reasons. FAC ¶¶ 133, 151.

Third, defendants argue that the NIED cause of action does not state a claim upon which relief can be granted because in California, "there is no independent tort of negligent infliction of emotional distress[.]" Potter v. Firestone, 6 Cal. 4th 965, 984 (1993). But that out-of-context quote does not stand for the proposition that any claim

titled "Negligent Infliction of Emotional Distress" must be dismissed as a matter of California law. Rather, plaintiff's NIED claim is best considered as a more specifically-explained claim for negligence. See id. ("The tort is negligence, a cause of action in which a duty to the plaintiff is an essential element.").

Accordingly, defendants' motion to dismiss plaintiff's eleventh and fourteenth causes of action as to CCSF is DENIED.

With respect to plaintiff's eleventh and fourteenth causes of action as alleged against Rocha, "except where a statutory exception applies . . . . an employee or former employee cannot sue individual employees based on their conduct, including acts or words, relating to personnel actions." Sheppard, 67 Cal. App. 4th at 342, 347. That holding applies "for all employees, whether or not they are supervisors. Personnel actions are made for the benefit of the enterprise-the employer, and it is the employer, not the individual employees, that must bear the risks and responsibilities attendant to these actions." Id. at 346; see generally Barrera v. Fed. Exp. Corp., Case No. 08-cv-2668-JF-RS, 2008 WL 4414723, at *2 (N.D. Cal. Sept. 26, 2008) (quoting Sheppard, 67 Cal. App. 4th at 349); Lomax v. Sellenthin, Case No. 98-cv-2588-TEH, 1999 WL 281120, at *5 & n.3 (N.D. Cal. Apr. 26, 1999) ("It is also well settled that, as an individual supervisor, Sellenthin is not a proper defendant to most of plaintiff's claims.") (citing Sheppard, 67 Cal. App. 4th at 339); but see May v. Semblant, Inc., Case No. 13-cv-01576-EJD, 2013 WL 5423614, at *4 (N.D. Cal. Sept. 27, 2013) (questioning reasoning in Sheppard, and declining to apply its holding to coworkers acting "in a supervisory and decision-making role"); Stripling v. Regents of the Univ. of California, Case No. 14-cv-02606-YGR, 2015 WL 5117900, at *8 (N.D. Cal. Aug. 31, 2015) (declining to follow Sheppard); Graw v. Los Angeles Cty. Metro. Transp. Auth., 52 F. Supp. 2d 1152, 1160 (C.D. Cal. 1999) (declining to follow Sheppard).

Accordingly, defendants' motion to dismiss plaintiff's eleventh and fourteenth causes of action as to Rocha is GRANTED and the claims are DISMISSED WITH PREJUDICE.

## I. Twelfth Claim: Cal. Govt. Code § 54957

California Government Code § 54957(b)(2) provides: "As a condition to holding a closed session on specific complaints or charges brought against an employee by another person or employee, the employee shall be given written notice of his or her right to have the complaints or charges heard in an open session rather than a closed session, which notice shall be delivered to the employee personally or by mail at least 24 hours before the time for holding the session. If notice is not given, any disciplinary or other action taken by the legislative body against the employee based on the specific complaints or charges in the closed session shall be null and void."

Plaintiff alleges that the District failed to give notice as required under the statute because the only notice delivered at least 24 hours before the session was emailed, rather than delivered personally or by physical mail. See FAC ¶ 139. Defendants argue that Duke, as a factual matter, received notice in some form at least 24 hours before the session, so there was no harm caused by any statutory deficiency. Rather than argue that they complied with the statute, defendants argue, without citation to any authority, that "[t]he Court should not entertain this exacting reading of the Education Code in this situation[.]" Mot., Dkt. 21 at 19.

Contrary to defendants' argument, the statute does not appear to require any demonstration of harm or prejudice on its face. Rather, its plain language appears to provide for a non-discretionary remedy—voiding any action taken in an improperly-noticed, closed session. Given the arguments presented to the court on this motion, defendants' motion to dismiss plaintiff's twelfth claim is DENIED.

However, the court notes that this claim was not thoroughly briefed on this motion. The parties are encouraged to revisit this claim with more thorough briefing in the future, including with respect to whether the statute's language requiring notice "by mail" requires physical mail rather than electronic mail; whether the complained-of session was an "open" or "closed" session, and whether the remedy plaintiff seeks applies to an "open" session at all; and whether the statutory remedy requires a demonstration of harm

1  or prejudice.

2          **m.**    **Thirteenth Claim:  Unruh Act**

3        Plaintiff has agreed to dismiss this claim as to both defendants.  It is therefore

4  DISMISSED WITH PREJUDICE as to both defendants.

5        **3.**    **Motion to Strike**

6          **a.**    **Punitive Damages**

7        As an initial matter, plaintiff has clarified that he is only seeking punitive damages

8  against Rocha individually, not the District as a public entity.  Accordingly, plaintiff's

9  requests for punitive damages based on claims asserted against the District are

10  STRICKEN from the complaint.  <u>E.g.</u>, FAC, pp. 32:9 & 36:1.

11        Because there are no claims pending against Rocha following this order,

12  defendants' motion with respect to Rocha is moot.

13          **b.**    **Strict Liability**

14        Defendants seek to strike language from FAC ¶ 13 alleging that the District is

15  strictly liable for act of its agents.  Regardless of the allegation's merits as a matter of

16  legal principle, the court declines to strike that paragraph from the complaint.

17        **4.**    **Request for Judicial Notice**

18        Defendants ask the court to take judicial notice of a complaint filed in the Superior

19  Court of the State of California for the County of Los Angeles.  Plaintiff does not oppose

20  the request.  Defendants do not ask the court to take notice of the truth of any facts

21  contained in that document—merely its existence.  RJN, Dkt. 21-1.  The request is

22  GRANTED.

23  **CONCLUSION**

24        For the foregoing reasons, plaintiff's first cause of action based on a theory that

25  defendants violated the Equal Protection Clause of the Constitution is DISMISSED AS

26  TO BOTH DEFENDANTS WITH LEAVE TO AMEND; plaintiff's first cause of action

27  based on a theory that defendants violated the Due Process Clause is DISMISSED AS

28  TO BOTH DEFENDANTS WITH PREJUDICE; plaintiff's second cause of action under

the Equal Pay Act is DISMISSED WITH LEAVE TO AMEND; plaintiff's third cause of action under 42 U.S.C. § 1981 is DISMISSED AS TO BOTH DEFENDANTS WITH PREJUDICE; plaintiff's fourth cause of action under the Age Discrimination in Employment Act is DISMISSED WITH LEAVE TO AMEND; plaintiff's fifth and seventh causes of action under FEHA and Title VII as alleged CCSF are DISMISSED WITH LEAVE TO AMEND, and as alleged against Rocha are DISMISSED WITH PREJUDICE; plaintiff's sixth cause of action under the FMLA is DISMISSED AS TO BOTH DEFENDANTS WITH PREJUDICE; defendants' motion to dismiss plaintiff's eighth cause of action under FEHA as alleged CCSF is DENIED, and the claim as alleged against Rocha is DISMISSED WITH PREJUDICE; plaintiff's ninth cause of action under FEHA as alleged against CCSF is DISMISSED WITH LEAVE TO AMEND, and as alleged against Rocha is DISMISSED WITH PREJUDICE; plaintiff's tenth cause of action for breach of contract is DISMISSED WITH PREJUDICE; defendants' motion to dismiss plaintiff's eleventh and fourteenth causes of action for NIED and IIED as alleged CCSF is DENIED, and the claims as alleged against Rocha are DISMISSED WITH PREJUDICE; defendants' motion to dismiss plaintiff's twelfth cause of action under Cal. Govt. Code § 54957 is DENIED; plaintiff's thirteenth cause of action under the Unruh Act is DISMISSED WITH PREJUDICE; and defendants' motion to strike is GRANTED IN PART AND DENIED IN PART, in accordance with this order.

Plaintiff shall file any amended complaint within 21 days of the date of this order. No new parties or causes of action may be pleaded without leave of court or the agreement of all defendants.

**IT IS SO ORDERED.**

Dated:  January 31, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge