UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHALAMON DUKE,<br>　　　　Plaintiff,<br>　　v.<br>CITY COLLEGE OF SAN FRANCISCO, et al.,<br>　　　　Defendants. | Case No. 19-cv-06327-PJH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 36 |

Before the court is defendants San Francisco Community College District ("CCSF") and Chancellor Mark William Rocha's ("Rocha" and together with CCSF, "defendants") motion to dismiss. The matter is fully briefed and suitable for resolution without oral argument. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

**BACKGROUND**

On August 26, 2019, plaintiff Dr. Shalamon Duke ("Duke" or "plaintiff") filed a complaint against defendants CCSF, Rocha, and Does 1–10 in the Superior Court of the State of California, County of San Francisco, asserting fourteen causes of action. Dkt. 1, Ex. A. On October 3, 2019, defendants removed this action to federal court. Dkt. 1. On November 22, 2019, plaintiff filed a First Amended Complaint ("FAC," Dkt. 19), asserting the same fourteen causes of action against defendants as the state court complaint. This court previously granted in part and denied in part defendants' motion to dismiss the FAC. Dkt. 32. Plaintiff has since filed a Second Amended Complaint ("SAC") alleging

1  ten causes of action: (1) negligent infliction of emotional distress ("NIED") (alleged
2  against CCSF and Does); (2) violation of Cal. Gov. Code § 54957 (alleged against CCSF
3  and Does); (3) intentional infliction of emotional distress ("IIED") (alleged against CCSF
4  and Does); (4) violation of Cal. Gov. Code § 12940(h) ("FEHA Discrimination") (alleged
5  against CCSF and Does); (5) violation of 42 U.S.C. § 1983 (alleged against CCSF,
6  Rocha, and Does); (6) violation of 29 U.S.C. § 206 ("Equal Pay Act") (alleged against
7  CCSF, Rocha, and Does); (7) violation of 29 U.S.C. §§ 621–34 ("ADEA") (alleged against
8  CCSF and Does); (8) violation of 42 U.S.C. § 2000 et seq. ("Title VII") (alleged against
9  CCSF and Does); (9) violation of Cal. Gov. Code § 12940(a) ("FEHA Discrimination")
10  (alleged against CCSF and Does); and (10) violation of Cal. Gov. Code § 12940(h)
11  ("FEHA Retaliation") (alleged against CCSF and Does). Dkt. 34.

Duke is an African American educator who served as Associate Vice Chancellor of Student Development at CCSF beginning in June 2018. SAC ¶¶ 8–9. Plaintiff's initial salary was supposed to be $172,184.67 per year, though for reasons not detailed in the SAC, CCSF started him at a lower salary. Id. ¶ 18. Plaintiff further alleges that a "Latina counterpart"—hired at the same time and the same associate vice chancellor position for which CCSF hired Duke—earned a starting salary of $193,152.18. Id.

On December 6, 2018, a state court civil complaint was filed in Los Angeles county against Duke alleging that he sexually harassed an individual while working at a former employer—a community college within the Los Angeles Community College District. Id. ¶ 19. The next day, plaintiff alleges that he contacted his superior, Vice Chancellor Trudy Walton, and informed her that litigation was pending against him in Los Angeles county. Id. ¶ 23. On December 8, 2018, CCSF placed Duke on administrative leave, which was communicated to him by the Vice Chancellor of Human Resources, Diana Gonzales. Id. ¶¶ 23–24, Ex. 7. On December 10, 2019, Gonzales, on behalf of Rocha, asked for Duke's resignation, and told plaintiff that Rocha would move to terminate him. Id. ¶ 24. As exhibits attached to the complaint detail, the impetus behind CCSF's actions against Duke was because Duke did not disclose to CCSF the existence

of a pending complaint during his hiring process. Id., Exs. 7, 10. CCSF further stated that their actions derived from the failure to disclose rather than the content of the complaint, which at the time were only unproven allegations against Duke. Id., Ex. 10.

On December 11, 2018, CCSF sent a notice to Duke formally placing him on administrative leave, and on the same day, Rocha sent an email to the CCSF community stating that Duke had been "separated" from CCSF and would "not return to his duties." Id. ¶ 25. On December 12, 2018, plaintiff received a 24-hour notice of a CCSF Board of Trustee's (the "Board") meeting via his email account, but he alleges that he did not receive notice via postal mail until December 15, 2018. Id. ¶ 26. The Board meeting occurred on December 13, 2018 and as a result of that meeting, CCSF decided to terminate plaintiff's employment. Id. ¶ 27. On December 14, 2018, CCSF provided notice to Duke that it intended to terminate his employment because Duke lacked judgment and good sense by failing to notify CCSF that a complaint was pending. Id. However, plaintiff alleges no complaint was pending when Duke assumed his position at CCSF. Id.

At plaintiff's request, CCSF held a pre-disciplinary hearing on January 9, 2019. Id. ¶ 30. Duke alleges that the hearing was deficient for various reasons not relevant to this order. Id. ¶ 31. On January 23, 2019, plaintiff received a second 24-hour notice of a Board meeting, again by email and not by postal mail. Id. ¶ 32. The Board met on January 24th, 2019, and unanimously voted to terminate Duke's employment. Id. On January 25, 2019, Rocha sent plaintiff notice of his termination. Id. ¶ 29.

Prior to CCSF's termination of Duke's employment, plaintiff had requested leave for the birth of his daughter, which had been granted. Id. ¶ 34. However, he was terminated shortly before he was scheduled to take his leave. Id. On June 14, 2019, Duke sent a California Government Tort Claim to CCSF, to which CCSF did not respond. Id. ¶ 35. On July 2, 2019, Duke filed a complaint with the California Department of Fair Employment and Housing. Id. ¶ 36. Duke subsequently received right-to-sue letters. Id.

/ / /

3

**DISCUSSION**

**A. Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). If dismissal is warranted, it is generally without prejudice, "unless it is clear . . . that the complaint could not be saved by any amendment." In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005). "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment." Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008).

Review is generally limited to the contents of the complaint, although the court can also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's

4

1 pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999)). The court may also consider matters that are properly the subject of judicial notice (Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001)), exhibits attached to the complaint (Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989)), and documents referenced extensively in the complaint and documents that form the basis of the plaintiff's claims (No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003)).

**B. Analysis**

**1. Request for Judicial Notice**

Federal Rule of Evidence 201 permits a court to notice a fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2).

Defendants request the court judicially notice public records in the form of a complaint against plaintiff filed in California state court as well as documents from CCSF's website including a board agenda, board minutes, and CCSF's organizational chart. Dkt. 36-1. Plaintiff does not oppose this request.

The court may judicially notice court documents already in the public record and filed in other courts. Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002). Thus, the state court complaint is noticeable. Generally, a court may consider factual information from the internet as long as the facts are not subject to reasonable dispute. See, e.g., Perkins v. LinkedIn Corp., 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014). However, it is not appropriate to notice the truth asserted within the websites especially when that information is solely within CCSF's control. See United States ex rel. Hong v. Newport Sensors, Inc., 728 Fed. App'x 660, 661 (9th Cir. 2018) (finding no abuse of discretion where district court judicially noticed websites "'not for the truth of the information' contained within them, but 'merely to show that [the] information was publicly available'").

5

1 Accordingly, the court GRANTS defendants' request to notice public records and the
2 availability of information on CCSF's website but not the truth of the information
3 contained within the websites themselves.

### 2. Whether Plaintiff's SAC Adequately Pleads Each Claim

Defendants only move to dismiss plaintiff's second, and fifth through tenth causes of action. The court discusses each contested claim in turn.

#### a. Second Claim: Violation of Government Code § 54957

Plaintiff's second claim alleges that CCSF violated Government Code § 54957 by failing to provide him with timely notice of the December 13, 2018 and January 24, 2019 CCSF Board of Trustee's meetings by postal mail or personal service. This court's previous order denied defendants' motion to dismiss this claim but invited the parties to provide additional briefing in subsequent motions. Dkt. 32 at 24. Defendants argue that the notice requirements of Government Code § 54957 do not apply to meetings where the Board is considering the discipline or dismissal of an employee and that the January 2019 meeting resulted in plaintiff's dismissal. Mtn. at 7. Plaintiff contends that the two notices he received from defendants stated that the Board of Trustees would discuss in closed session the information in the "charges" brought against plaintiff. Opp. at 8. Because the notice explicitly referenced charges, plaintiff posits that he was owed proper notice of those charges brought against him and the notice was improper because the notice did not arrive by postal mail until after the Board held its meetings. Id. at 8–10.

Generally, California's Brown Act requires local legislative bodies, including the board of a community college district, to open their meetings to the public. Fischer v. L.A. Unified Sch. Dist., 70 Cal. App. 4th 87, 95 (Ct. App. 1999); see also Cal. Gov. Code §§ 54951–52. California Government Code § 54957 creates a "personnel exception" to the open meeting requirement and provides:

> (1) Subject to paragraph (2), this chapter shall not be construed to prevent the legislative body of a local agency from holding closed sessions during a regular or special meeting to consider the appointment, employment, evaluation of performance, discipline, or dismissal of a public employee or to hear

6

> complaints or charges brought against the employee by another person or employee unless the employee requests a public session.
>
> (2) As a condition to holding a closed session on specific complaints or charges brought against an employee by another person or employee, the employee shall be given written notice of his or her right to have the complaints or charges heard in an open session rather than a closed session, which notice shall be delivered to the employee personally or by mail at least 24 hours before the time for holding the session. If notice is not given, any disciplinary or other action taken by the legislative body against the employee based on the specific complaints or charges in the closed session shall be null and void.

Cal. Gov. Code § 54957(b). In Fischer, 70 Cal. App. 4th at 96, the California Court of Appeal interpreted the final phrase of the first paragraph—"unless the employee requests a public session"—as only modifying the phrase immediately before it, i.e., "or to hear complaints or charges brought against the employee by another person or employee." The same phrase does not modify the phrase "to consider the appointment, employment, evaluation of performance, discipline, or dismissal of a public employee." Id. Thus, the court held that "section 54957 requires 24-hour written notice only when the Board hears specific complaints and charges, and not when it considers the appointment, employment, evaluation of performance, discipline, or dismissal of a public employee." Id. at 100 (emphasis added).

Neither party disputes Fischer's interpretation of the personnel exception to the Brown Act. Instead, they dispute whether the CCSF Board of Trustee's meetings were intended to either hear complaints or charges against Duke or to consider the discipline or dismissal against Duke. Plaintiff, favoring the former application, contends that Exhibits 9 and 16 of the SAC (corresponding to the notices he received for the December 2018 and January 2019 Board meetings) specifically reference "charges" and do not state the purpose of the meetings were for his discipline or dismissal. Opp. at 9. Defendants, favoring the latter application, argue that the January 24, 2019 board meeting was only a closed session vote on plaintiff's dismissal as associate vice chancellor. Because the Board did not receive testimony or evidence from witnesses or third parties, defendants contend that the January 24th meeting did not constitute a

7

meeting to consider a complaint or charge. Mtn. at 8.

Prior California Court of Appeal decisions are helpful in fleshing out the contours of what constitutes a complaint or charge. In Bell v. Vista Unified School District, the Court of Appeal, relying on prior case law and a California Attorney General opinion, defined "[b]oth 'complaint' and 'charges [as] connot[ing] an accusation, something which is 'brought against' an individual." 82 Cal. App. 4th 672, 683 (Ct. App. 2000) (first alteration in original) (quoting 78 Ops. Cal. Atty. Gen. 218, 223 (1995)). In Bell, a school board met to hear a report made by a separate administrative body concerning an employee. Id. at 681. The court held that presentment of the separate administrative body's findings to the school board constituted an accusation (essentially, an indictment) requiring notice under the Brown Act. Id. at 683.

A more recent opinion, Ricasa v. Office of Administrative Hearings, 31 Cal. App. 5th 262, 276 (Ct. App. 2018), held that section 54957's "complaints or charges" provision is only triggered when a board conducts a hearing in which witnesses are heard and evidence presented. Ricasa distinguished Bell because the board in Bell essentially heard evidence from a prior administrative hearing and, therefore, met to conduct an evidentiary hearing. Id. at 279. In contrast to Bell, the board in Ricasa met to initiate the process of demoting a counselor from an administrative position on the basis of a guilty plea that the counselor had already entered into. Id. at 277. "The Board did not resolve a factual dispute that required a response from [the counselor], but instead debated whether the undisputed facts warranted discipline." Id. at 279. The Ricasa court held that this meeting did not violate the Brown Act because the "Board did not receive evidence or testimony from any percipient witness, nor did it hear from a third party about any claims against [the counselor]." Id. at 277.

Here, there are two Board meetings for which plaintiff alleges he received deficient notice. First, the SAC alleges that the Board held a hearing on December 13, 2018 and following the meeting, Vice Chancellor Gonzales informed plaintiff that the Board intended to terminate his employment because Duke lacked "judgment and good sense

8

1 required of a senior administrator with [CCSF]." SAC ¶ 27. Defendants do not discuss
2 this meeting in their motion. Plaintiff has alleged sufficient facts to state a claim for
3 violation of Government Code section 54957. The December 13, 2018 meeting was the
4 first opportunity where the Board met to hear facts concerning Duke's complaint and
5 situation. Defendants did not dismiss him as a result of that meeting but instead informed
6 him that they intended to do so. This indicates that the Board weighed and considered
7 some facts presented to it and did not previously have those facts. It is plausible that the
8 Board received evidence permitting it to determine that Duke's employment should be
9 terminated. If the Board received evidence then, under either Ricasa or Bell, the Board
10 plausibly could have considered a complaint or charge against plaintiff requiring written
11 notice, which he alleges was not timely received.

12 Second, the SAC also alleges a Board meeting occurred on January 24, 2019
13 where "the Board of Trustees unanimously voted to terminate Dr. Duke's employment."
14 SAC ¶ 32. The decision to terminate an employee is clearly a dismissal decision, which
15 the Board need not have provided notice to plaintiff. This was neither an evidentiary
16 hearing, as defined by Ricasa, nor an accusation, as defined by Bell. As demonstrated in
17 the SAC, plaintiff had the opportunity prior to the January 24th Board meeting to present
18 evidence in his defense and for the Board to hear evidence and witnesses concerning
19 complaints or charges brought against plaintiff. Thus, plaintiff has not stated a plausible
20 claim for violation of Government Code section 54957 for the January 24, 2019 Board
21 meeting.

22 Finally, the court notes that defendants have not addressed whether electronic
23 mail constitutes sufficient notice for purposes of section 54957, despite the court's
24 invitation to do so in its prior order. It may be the case that plaintiff received sufficient
25 notice to meet the requirements of section 54957, but for the purposes of a motion to
26 dismiss, it is not clear that plaintiff fails to state a claim. He alleges that notice via postal
27 mail arrived after the Board held its meeting. Thus, plaintiff has stated a plausible claim
28 for violation of the Brown Act for the December 13, 2018 Board meeting, but not the

9

1 January 24, 2019 Board meeting.

For the foregoing reasons, defendants' motion to dismiss plaintiff's second cause of action is GRANTED IN PART and DENIED IN PART. Because plaintiff has had the opportunity to allege sufficient facts concerning the January 24, 2019 meeting and has not cured the issues identified by the court's prior order, further amendment would be futile. Thus, to the extent plaintiff alleges a violation of Government Code § 54957 concerning the January 24, 2019 Board meeting, that claim is DISMISSED WITH PREJUDICE.

### b. Fifth Claim: § 1983

Plaintiff's fifth claim is for violation of 42 U.S.C. § 1983, advancing a theory that defendants have violated his right to equal protection of the laws as guaranteed by the Fourteenth Amendment. In relevant part, section 1983 provides that:

> Every person who, under color of any statute . . . of any State or Territory or the District of Columbia, subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.

As an initial matter, plaintiff brings his section 1983 claim against both CCSF and Rocha. SAC ¶ 65. The Supreme Court has held that "a State is not a person within the meaning of § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 62 (1989). This holding extends to "governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes."[1] Id. at 70. California community colleges are arms of the state for Eleventh Amendment purposes and therefore CCSF is not a person as defined by section 1983. See Cerrato v. S.F. Comm. Coll. Dist., 26 F.3d 968, 972 (9th

---

[1] Though it references "arms of the State" for Eleventh Amendment purposes, Will's holding does not rely on or derive from the Eleventh Amendment's grant of state sovereign immunity. See 491 U.S. at 63–64. Thus, even though CCSF waived its Eleventh Amendment immunity by voluntarily removing this case to federal court (Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 618, 620 (2002)), a State and its governmental arms cannot be a "person" under § 1983.

Cir. 1994) (citing Mitchell v. L.A. Comm. Coll. Dist., 861 F.2d 198, 201–02 (9th Cir. 1988)).

The same rule generally applies, with some exception, to suits against state officials sued in their official capacities, because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will, 491 U.S. at 71. Discussing one such exception to the general rule, the Will court noted that a state official is a "person" if he is sued for injunctive relief in his official capacity. Id. at 71 n.10 (citing, e.g., Ex parte Young, 209 U.S. 123, 159–60) (1908)). Before applying the general rule and the exception, two facts are notable here: first, plaintiff has not specified whether he is suing Rocha in his official or personal capacity and second, plaintiff only seeks monetary damages for his section 1983 claim. SAC, Prayer for Relief. To the extent plaintiff brings his claim against Rocha in his official capacity for monetary damages, Will makes clear that such an action cannot be maintained. To the extent plaintiff seeks to bring a claim against Rocha in his personal capacity for monetary damages, such a claim is permissible, but only by showing that the official personally caused the deprivation of plaintiff's federal right. Hafer v. Melo, 502 U.S. 21, 25 (1991) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)). Therefore, the court proceeds to the merits of plaintiff's claim but only as alleged against Rocha in his personal capacity.

"To state a claim under section 1983 for a violation of the Equal Protection Clause, a plaintiff 'must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class,' and that plaintiff was treated differently from persons similarly situated. Lam v. City & Cty. of San Francisco, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); and citing Lee, 250 F.3d 668; and Washington v. Davis, 426 U.S. 229, 239–40 (1976)). Thus, Duke must demonstrate "(1) that the plaintiff was treated differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) that the defendant acted with discriminatory intent in

11

applying this classification; and (4) the plaintiff suffered injury as a result of the discriminatory classification." Id. (citing Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979)).

Here, plaintiff alleges that Rocha deprived him of his right to equal protection of the laws because Rocha treated him differently than other non-African American male employees. SAC ¶ 70. Specifically, Duke alleges that Rocha improperly terminated him because the allegations of misconduct occurred in Los Angeles Community College District over which CCSF has no jurisdiction and because Rocha and CCSF terminated him based on two grounds that are not stated in California Education Code section 87732. Opp. at 15. Plaintiff is African American, which is the only protected class he cites with respect to his equal protection claim. SAC ¶ 68. While the court takes all his allegations as true, there are no allegations that the unequal treatment he suffered was based on Rocha personally classifying him as an African American. Nor are there any allegations that Rocha personally acted with discriminatory intent based on the impermissible classification, i.e., that Duke was African American. Thus, plaintiff fails to allege the second and third elements of an equal protection claim.

For the foregoing reasons, defendants' motion to dismiss plaintiff's fifth claim is GRANTED. Plaintiff's claim alleged against CCSF and Rocha in his official capacity are DISMISSED WITH PREJUDICE as neither is a "person" under section 1983. Because the court has previously dismissed plaintiff's section 1983 claim and has not cured his deficiencies, further amendment would be futile. Thus, plaintiff's claim alleged against Rocha in his personal capacity is also DISMISSED WITH PREJUDICE.

### c. Sixth Claim: Equal Pay Act

Duke alleges that defendants violated the Equal Pay Act because CCSF paid an employee (a "Latina counterpart")—holding a position with similar responsibilities performing a "comparable in scope of work" as Duke—more than plaintiff, despite his having "more direct experience." See SAC ¶¶ 79–81.

"To make out a case under the Equal Pay Act, a plaintiff must prove that an

1  employer is paying different wages to employees of the opposite sex for equal work. The
2  jobs held by employees of opposite sexes need not be identical, but they must be
3  'substantially equal.'" Hein v. Or. Coll. of Educ., 718 F.2d 910, 913 (9th Cir. 1983)
4  (quoting Gunther v. Cty. of Washington, 623 F.2d 1303, 1309 (9th Cir. 1979), aff'd on
5  other grounds, 452 U.S. 161 (1981)). "[T]he proper test for establishing a prima facie
6  case in a professional setting such as that of a college is whether the plaintiff is receiving
7  lower wages than the average of wages paid to all employees of the opposite sex
8  performing substantially equal work and similarly situated with respect to any other
9  factors, such as seniority, that affect the wage scale." Id. at 916. When there is only a
10 single opposite-gender employee with similar work, it is appropriate to compare the
11 plaintiff's pay against that of a single employee. Id. at 918 (noting, however, that the
12 Ninth Circuit looks "critically upon the use of a single comparator to make out a prima
13 facie case"). "The prima facie case is limited to a comparison of the jobs in question, and
14 does not involve a comparison of the individuals who hold the jobs." Stanley v. Univ. of
15 S. Cal., 178 F.3d 1069, 1074 (9th Cir. 1999) (citations omitted). Further, "it is actual job
16 performance requirements, rather than job classifications or titles, that is determinative."
17 E.E.O.C. v. Maricopa Cty. Cmty. Coll. Dist., 736 F.2d 510, 513 (9th Cir. 1984) (citing
18 Gunther, 623 F.2d at 1309).

19 Plaintiff has not alleged that he is receiving lower wages than the average of
20 wages paid to all employees of the opposite sex performing substantially equal work and
21 otherwise similarly situated as plaintiff. Instead, he seeks to demonstrate that the
22 appropriate comparison is with a single opposite-gender employee with similar work—in
23 this case his Latina counterpart. The court previously dismissed plaintiff's Equal Pay Act
24 claim because he had not properly alleged this theory. In the SAC, plaintiff alleges that
25 the comparator individual in question "was the only other person who, at all relevant
26 times, held the position of Associate Vice Chancellor of Student Affairs, making her the
27 only individual with whom he could compare himself to for purposes of this civil action."
28 SAC ¶ 78. Defendants contend that CCSF's organizational chart, which they request the

court to judicially notice, demonstrates that CCSF employs numerous associate vice chancellors against which Duke's salary could be compared. Mtn. at 12.

The question here is whether plaintiff has alleged sufficient factual allegations to demonstrate that the comparator individual was the only individual with comparable job performance requirements as plaintiff and that he was paid less than her. Defendants' organizational chart is not persuasive for two reasons. First, the proper inquiry to determine whether the jobs compared are substantially equal is into job performance requirements and not job titles, which is all the chart describes. Second, the truth asserted in the organizational chart is not judicially noticeable.[2]

Plaintiff has alleged sufficient facts to state a claim for violation of the Equal Pay Act. Duke alleges that his Latina counterpart was hired for the same position as he was. SAC ¶ 18. He also alleges that his counterpart was the only other associate vice chancellor of student affairs making her the only individual against which plaintiff could compare himself. Id. ¶ 78. It is reasonable to conclude that two associate vice chancellors overseeing the same area of responsibility (i.e., student affairs) would have the same job responsibilities. It may be the case that, at a later stage, other associate vice chancellors may also have similar job responsibilities making plaintiff's single comparator inappropriate. However, for purposes of a motion to dismiss, plaintiff has alleged sufficient facts to demonstrate the two jobs were substantially equal. Plaintiff has also alleged that he was paid less than his counterpart, which is supported by an email from Vice Chancellor Walton acknowledging the pay differential. Id. ¶ 18 & Ex. 3. Therefore, plaintiff has stated a claim for violation of the Equal Pay Act.

For the foregoing reasons, defendants' motion to dismiss plaintiff's sixth claim is

---

[2] Even if the court were to consider the organizational chart, it is not clear that the chart supports the point defendants assert. The chart purports to demonstrate that there are two Associate Vice Chancellor of Student Affairs—one vacant, i.e., Duke's former position, and one filled by the individual Duke seeks as his single comparator. Dkt. 36-1, Ex. 4. If anything, this suggests there are no other associate vice chancellors of student affairs that plaintiff should have but did not include. If the other associate vice chancellor positions are appropriate comparisons as defendants contend, then a more fulsome factual record will bear out their argument.

14

DENIED.

### d. Seventh Claim: ADEA

The Age Discrimination in Employment Act ("ADEA") provides:

> It shall be unlawful for an employer--
>
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
>
> (3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623. "To establish a prima facie case of discrimination, a plaintiff must allege in [his] complaint that: (1) [he] was at least forty years old; (2) [he] was performing [his] job satisfactorily; (3) discharged; and (4) 'either replaced by [a] substantially younger [employee] with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination.'" Sheppard v. David Evans & Assoc., 694 F.3d 1045, 1049 (9th Cir. 2012) (third and fourth alterations in original) (quoting Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1207 (9th Cir. 2008)).

With regard to the fourth element regarding a substantially younger employee, the Ninth Circuit has adopted a rebuttable presumption regarding the age of a replacement employee.

> [A]n age difference of less than ten years, without more evidence, is insufficient to make a prima facie case of age discrimination. . . . [A]n age difference of less than ten years creates a rebuttable presumption that the age difference is insubstantial. . . . A plaintiff who is not ten years or more older than his or her replacements can rebut the presumption by producing additional evidence to show that the employer considered his or her age to be significant. The plaintiff can produce either direct or circumstantial evidence to show that the employer considered age to be a significant factor.

France v. Johnson, 795 F.3d 1170, 1174 (9th Cir. 2015) (footnote and citation omitted).

15

1    Defendants argue that plaintiff cannot make out a prima facie claim because he
2 was not performing his job satisfactorily.  They also argue that Duke was ostensibly the
3 same age when he was hired as he was when CCSF fired him, which undermines his
4 claim of age discrimination.  Mtn. at 13.  Defendants also argue that plaintiff cannot claim
5 an individual with equal or inferior qualifications and an age differential in excess of ten
6 years replaced him because CCSF's organizational chart reflects that Duke's position
7 remains vacant.  Id.  Plaintiff contends that he has alleged that the person now carrying
8 out his duties is an interim dean and son of the Vice Chancellor of Human Resources.
9 Opp. at 14.

10   In the prior order, the court dismissed plaintiff's ADEA claim because the
11 allegations concerning his replacement's age were conclusory and plaintiff alleged no
12 other facts demonstrating that defendants considered plaintiff's age to be significant.  Dkt.
13 32 at 15.  Despite the court's prior finding, plaintiff has not alleged any new factual
14 allegations to cure this deficiency.  He continues to allege that he "is informed, believes
15 and thereon alleges that the individual who has assumed his duties is at least 10 years
16 younger than him" and that "his duties have been assumed by the son of then Senior
17 Vice Chancellor of Human Resources."  SAC ¶ 93.  Because plaintiff has not identified
18 any factual allegations concerning his replacement's age, plaintiff has not established a
19 rebuttable presumption that defendants acted because of his age.  Nor does the SAC
20 contain any additional allegations demonstrating that defendants thought Duke's age to
21 be a significant factor.

22   For the foregoing reasons, defendants' motion to dismiss plaintiff's seventh claim
23 is GRANTED.  Because plaintiff has failed to allege new factual allegations to support
24 this claim, further amendment would be futile.  Accordingly, plaintiff's seventh claim is
25 DISMISSED WITH PREJUDICE.

### e. Eighth and Ninth Claims: Discrimination

27   Plaintiff's eighth claim for violation of Title VII alleges that defendants discriminated
28 against him based on his race because CCSF terminated him despite not having the

authority to investigate claims and allegations in a different community college district. SAC ¶ 102. According to plaintiff, this demonstrates CCSF's action was motivated by plaintiff's race and color because CCSF has never terminated an associate vice chancellor for allegations that CCSF neither investigated nor were in its jurisdiction. Id. ¶ 103. Plaintiff's ninth claim for violation of California's discrimination law alleges that defendants discriminated against him based on his race for requesting leave for the birth of his daughter and for terminating him based on allegations pending in a civil lawsuit filed in Los Angeles county. Id. ¶ 111.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. California Government Code section 12940(a) prohibits employers from discharging a person from employment on the basis of that person's race, sex, or age (among other protected categories). Where, as here, a plaintiff does not offer direct evidence of discrimination, courts use the McDonnell Douglas framework to prove discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). California has adopted the McDonnell Douglas framework for discrimination claims brought under FEHA. Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 355 (2000); see also Metoyer v. Chassman, 504 F.3d 919, 941 (9th Cir. 2007) ("California courts apply the Title VII framework to claims brought under FEHA."), abrogated on other grounds by Nat'l Ass'n of African Am.-Owned Media v. Charter Commc'ns, Inc., 915 F.3d 617 (9th Cir. 2019); Adetuyi v. City & Cty. of San Francisco, 63 F. Supp. 3d 1073, 1092 (N.D. Cal. 2014) (collecting cases).

Under the McDonnell-Douglas framework, a plaintiff must establish four prima facie elements: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of

17

discrimination." Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847 (9th Cir. 2004) (quoting Peterson v. Hewlett–Packard Co., 358 F.3d 599, 604 (9th Cir. 2004)). It is important to note, however, that the McDonnell Douglas framework is an evidentiary framework and not a pleading standard. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002). Thus, while the McDonnell Douglas prima facie case is a useful touchstone in evaluating whether plaintiff has a plausible claim, he is "not required to plead a prima facie case of discrimination in order to survive a motion to dismiss." Sheppard, 694 F.3d at 1050 n.2 (citing Swierkiewicz, 534 U.S. at 508–11).

Defendants argue that plaintiff's claims are entirely bereft of allegations linking Duke's termination of his employment to his race or color. Mtn. at 14. The court previously found that plaintiff's discrimination claims did not establish plausible, well-pled allegations that defendants acted because of plaintiff's sex, gender, color, or race. Dkt. 32 at 16. Moreover, plaintiff's allegations were conclusory "in light of the fact that the parties agree on certain core facts surrounding defendants' articulated justification for terminating plaintiff—that he failed to disclose an investigation of misconduct with students undertaken by his previous employer prior to December 7, 2018." Id.

Plaintiff has added some new factual matter to his discrimination claims. Duke continues to allege that defendants' articulated justification for terminating him is that he failed to disclose an investigation of misconduct against him at his former Los Angeles community college district employer. SAC ¶ 27 & Ex. 10. Plaintiff also alleges that, despite the articulated justification, defendants actually terminated him because of the content of the allegations pending against him. Id. ¶ 102. The new allegation is that other senior administration officials at CCSF have been the subject of accusations by students, but those individuals were not removed from their positions. Id. Plaintiff invites the court to find that CCSF was motivated by race because CCSF has never terminated an associate vice chancellor despite past student accusations. Id. ¶¶ 103, 111.

The new allegations do not cure the deficiencies the court identified in its prior order for two reasons. First, plaintiff has failed to allege any impermissible racial animus

18

on the part of his employer. His new allegations concerning accusations by students against other senior administration officials are conclusory and cannot be credited. For example, there is no detail on who these other officials are and whether those officials belonged to a different racial group than plaintiff. Without such details, the court cannot draw a comparison between plaintiff's race and the other administration officials who were purportedly treated differently. Second, there is no causal connection between any purported discriminatory animus and the firing decision. For example, accepting plaintiff's allegation that CCSF terminated Duke because of the contents of the complaint pending against him in Los Angeles county, there is no connection between that complaint and plaintiff's race. Put differently, the logical inference from plaintiff's allegation is that defendants terminated his employment because of the complaint filed against him (and what that complaint said) and not his membership in a protected class. Thus, even though he need not meet all four elements of a prima facie case, plaintiff fails to plead any circumstances that give rise to an inference of discrimination.

For the foregoing reasons, defendants' motion to dismiss plaintiff's eighth and ninth claims for discrimination is GRANTED. Because plaintiff has not alleged any new factual allegations that state a claim after being afforded the opportunity to do so, further amendment would be futile. Accordingly, plaintiff's eighth and ninth claim for discrimination are DISMISSED WITH PREJUDICE.

### f. Tenth Claim: Violation of Government Code § 12940(h)

Plaintiff's tenth claim alleges that he engaged in a protected activity under Government Code § 12940(h) and defendants retaliated against him for doing so. SAC ¶¶ 118–21. The court previously dismissed plaintiff's section 12940(h) claim because he failed to adequately plead the first and fourth elements required to establish a prima facie case of retaliation under the FEHA—that plaintiff show he or she engaged in a 'protected activity,' and that plaintiff show a causal link between the protected activity and the employer's action. Dkt. 32 at 19. The allegations supporting the tenth claim in the SAC are indistinguishable from the allegations the court dismissed in the FAC. Accordingly,

1 the court's prior reasoning applies here in equal measure.

2 For the foregoing reasons, defendants' motion to dismiss plaintiff's tenth claim is GRANTED. Plaintiff has not alleged any new factual allegations after being afforded the opportunity to do so and further amendment would therefore be futile. Accordingly, plaintiff's tenth claim is DISMISSED WITH PREJUDICE.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiff's second cause of action under Government Code § 54957 is GRANTED IN PART AND DENIED IN PART in accordance with this order and plaintiff's claim concerning the January 2019 Board of Trustee meeting is DISMISSED WITH PREJUDICE; defendants' motion to dismiss plaintiff's fifth cause of action for violation of 42 U.S.C. § 1983 is GRANTED and plaintiff's claim alleged against both defendants is DISMISSED WITH PREJUDICE; defendants' motion to dismiss plaintiff's sixth cause of action for violation of the Equal Pay Act is DENIED; defendant's motion to dismiss plaintiff's seventh cause of action under the Age Discrimination in Employment Act is GRANTED and plaintiff's claim is DISMISSED WITH PREJUDICE; defendants' motion to dismiss plaintiff's eighth and ninth causes of action under Title VII and FEHA is GRANTED and plaintiff's claims are DISMISSED WITH PREJUDICE; and defendants' motion to dismiss plaintiff's tenth cause of action for violation of Government Code § 12940(h) is GRANTED and plaintiff's claim is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: April 10, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge