UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHALAMON DUKE,
    Plaintiff,

v.

CITY COLLEGE OF SAN FRANCISCO, et al.,
    Defendants.

Case No. 19-cv-6327-PJH

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 76

Defendant's motion for summary judgment came on for hearing before this court on April 22, 2021. Plaintiff Shalamon Duke appeared through his counsel, Donald Lancaster. Defendant City College of San Francisco ("defendant" or "CCSF") appeared through its counsel, Damon Thurston and Maria Lampasona. Having read the papers filed in conjunction with the motion and carefully considered the arguments and relevant legal authority, and good cause appearing, the court hereby rules as follows.

**BACKGROUND**

This is an employment case. Plaintiff was employed as Associate Vice Chancellor of Student Development at CCSF starting in June 2018. Second Amended Complaint ("SAC"), Dkt. 34, ¶ 18. Prior to CCSF, plaintiff worked for the Los Angeles Community College District ("LACCD"). SAC, ¶¶ 4, 19.

On Thursday, December 6, 2018, a civil complaint was filed against plaintiff in Los Angeles County, alleging that he had sexually harassed a LACCD student-employee. SAC, ¶ 19. On Friday, December 7, 2018, plaintiff became aware of the civil complaint via a LA Times online article. SAC, ¶ 23; Dkt. 77 at 45 (Duke dep. at 70:18-25). The

same day, plaintiff notified his direct supervisor, Trudy Walton, of the complaint. SAC, ¶ 23.

The next day, Saturday, December 8, 2018, CCSF Vice Chancellor of Human Resources Dianna Gonzales told plaintiff by telephone that he was being placed on administrative leave. SAC, ¶ 24.

On Monday, December 10, 2018, plaintiff spoke by phone with Gonzales and Associate Vice Chancellor of Human Resources Clara Starr. Dkt. 77 at 50-51 (Duke dep. at 75:18-76:3). On that call, plaintiff acknowledged to Gonzales and Starr that he had been placed on administrative leave at LACCD, but told them that he was ultimately "cleared and returned back to work," (though he does not recall if he used the specific word "cleared") and that he "had an email welcoming him back to work" at LACCD. Dkt. 77 at 51-52 (Duke dep. at 76:10-77:3).

It is useful here to step back and review the timeline of the LACCD allegations. A female student-employee filed a sexual harassment complaint with LACCD in December 2017, and plaintiff was placed on administrative leave. Dkt. 77 at 12-13 (Duke dep. at 17:14-18:1).

In late February or early March 2018, plaintiff received a letter from LACCD's compliance officer, Victoria Friedman. Dkt. 77 at 14 (Duke dep. at 19:14-19). The letter set forth the allegations made by the student-employee, including that plaintiff made unwelcome sexual advances, exposed himself to her, requested that she send sexually explicit photographs to him, and retaliated against her when this information came to light. Dkt. 76 at 8.

In April 2018, plaintiff was taken off administrative leave. On April 13, 2018, the LACCD vice president of student services sent an email stating that "Shalamon is back from his leave" and to "please contact him for any matters requiring his attention as the administrator responsible for counseling." Dkt. 77 at 152 (Duke dep., Ex. 4).

When plaintiff returned from leave, he was told that the compliance officer (Friedman) wanted to interview him as part of her investigation into the complaint, but

2

plaintiff refused to do so. Dkt. 77 at 16 (Duke dep. at 21:1-25).

At some point in April or May 2018, plaintiff applied for and was offered the Associate Vice Chancellor job at CCSF. His last day at LACCD was June 1, 2018. Dkt. 77 at 22 (Duke dep. at 28:9-11). Plaintiff testified that, during the interview process with CCSF, he was not aware of the status of the LACCD complaint and did not discuss the complaint or his administrative leave. Dkt. 77 at 26-27 (Duke dep. at 41:25-42:8).

On September 28, 2018, LACCD compliance officer Friedman issued her investigative report. While the report is heavily redacted, it appears that Friedman considered the elements of sexual harassment for seven separate incidents, and found that all elements were met for all seven incidents. Dkt. 77 at 108-139 (LACCD report at 36-67). The report further considered the elements for one incident of sexual assault and one incident of retaliation, and found that all elements were met for both incidents. Dkt. 77 at 139-43, 146-49 (LACCD report at 67-71, 74-77).

Plaintiff testified at his deposition that he received the report in November 2018. Dkt. 77 at 8 (Duke dep. at 13:3-4). Plaintiff was asked "at the point that you became aware of this investigation report from [LACCD], did you inform anyone at [CCSF] about that investigation report?", and answered "I did not." Dkt. 77 at 45 (Duke dep. at 70:13-17).

Turning back to the series of events at CCSF, plaintiff testified that, during the December 10, 2018 phone call with Gonzales and Starr, he did not tell them about the existence of the LACCD report. Dkt. 77 at 52 (Duke dep. at 77:8-22). When asked why he did not tell them about the report despite knowing of its existence, he said "[t]here was no reason at all." Id.

On Tuesday, December 11, 2018, CCSF Chancellor Mark Rocha sent an email to the "CCSF community" stating that plaintiff "has been separated from the college and will not return to his duties." Dkt. 86 at 97 (Rocha dep., Ex. 20).

Also on December 11, plaintiff offered his resignation to Gonzales via email. Dkt. 77 at 54 (Duke dep. at 81:23-25); Dkt. 77 at 156 (Duke dep., Ex. 8). Plaintiff testified that

Gonzales did not respond to that email, either verbally or in writing. Dkt. 77 at 55 (Duke dep. at 82:19-24).

Also on December 11, plaintiff was sent a letter titled "notice of administrative leave with pay." Dkt. 77 at 154 (Duke dep., Ex. 7). The letter states that it "serves as formal notification that you were placed on administrative leave with pay effective Saturday, December 8, 2018, per your conversation with Dianna Gonzales this past weekend." Id. The letter further states that "you were placed on leave due to management's concern with your failure to disclose complaints filed against you for unprofessional conduct." Id.

On December 12, 2018, plaintiff received an email providing him with "24 hour notice" of a board meeting to be held on December 13. Dkt. 77 at 182 (Gonzales dep., Ex. 16).

On December 14, Gonzales sent plaintiff a letter stating that CCSF "intends to terminate your employment." Dkt. 77 at 158-159 (Duke dep., Ex. 9). The letter cites the December 7 LA Times article, and says "the article details alleged despicable conduct by you." Id. The letter further states that "the district recognizes that the article and lawsuit raise allegations that have not been proven, and the district's termination of your employment is not based on the alleged misconduct." Id.

In the December 14 letter, Gonzales then states that "during a call with you" on December 10, "you told me that you had a letter of exoneration" from LACCD. Dkt. 77 at 158-159 (Duke dep., Ex. 9). Gonzales states that "if you did have a letter of exoneration, you should have presented the letter to the district prior to beginning your employment," and that "failure to produce the letter when you were hired is further evidence of your lack of judgment." Id. The December 14 letter further states that plaintiff's failure to deliver the purported exoneration letter after being asked for it leads to the "only reasonable explanation" that "the letter does not exist," and "thus, you made a false statement to me on December 10." Id. The letter then states that plaintiff has "exhibited dishonesty in addition to a serious lack of judgment." Id.

4

At plaintiff's request, a pre-disciplinary Skelly hearing was held on January 9, 2019 by Skelly officer Trudy Largent. SAC, ¶ 29. At the hearing, plaintiff told the Skelly officer about the "email welcoming him back to work" at LACCD. Dkt. 77 at 61 (Duke dep. at 89:18-23). Plaintiff does not recall telling the Skelly officer about the LACCD report sustaining the allegations. Dkt. 77 at 62 (Duke dep. at 90:2-8).

On January 14, 2019, the Skelly officer sent her report to CCSF. The report set forth three charges: (1) lack of judgment and good sense required of a senior administrator of the district, based on plaintiff's failure to notify CCSF of the LACCD complaint, (2) lack of judgment, based on plaintiff's statement to Gonzales regarding a letter of exoneration and his failure to produce that document, and (3) dishonesty based on plaintiff's statement about the letter of exoneration "when you knew the letter did not exist." Dkt. 77 at 162.

As to (1), the Skelly officer concluded that plaintiff "had some professional responsibility to disclose" the LACCD complaint, and thus "there are reasonable grounds to support" the "lack of judgment" charge. Dkt. 77 at 164-65.

As to both (2) and (3), the Skelly officer first concluded that plaintiff "did not use the word exonerate" in his December 10 conversation with Gonzales. Dkt. 77 at 165-66. However, the Skelly officer nevertheless concluded that plaintiff's failure to provide the "welcome back" email to CCSF "demonstrated a lack of judgment" as to charge (2). Id. at 165.

And as to charge (3), the Skelly officer concluded that plaintiff's "representation" of the 'welcome back' email was an "untruthful statement," thus supporting the dishonesty charge. Dkt. 77 at 166. Specifically, the report concluded that "there are reasonable grounds to support that he did not truthfully represent to Vice Chancellor Gonzales that the email supported that there was no pending complaint." Id.

A CCSF board meeting was held on January 24, 2019, and the Board of Trustees unanimously voted to terminate plaintiff's employment. SAC, ¶ 32. On January 25, 2019, Chancellor Rocha sent plaintiff a notice of termination. Id. ¶ 33.

1    Plaintiff originally filed this lawsuit in state court against CCSF and individual
2    defendants.  In addition to the claims arising out of his termination, plaintiff also asserts a
3    claim under the federal Equal Pay Act, based on the allegation that he was paid less than
4    a female counterpart, Elizabeth Coria.  SAC, ¶ 79.  Plaintiff also alleges that he was
5    terminated in retaliation for complaining about the pay disparity with Coria.  Id., ¶¶ 60, 61.
6     The case was removed to this court, and after hearing two motions to dismiss, all
7    claims against individual defendants were dismissed, and only five causes of action
8    against CCSF remain:

- (1) negligent infliction of emotional distress,
- (2) violation of Cal. Gov't Code § 54957,
- (3) intentional infliction of emotional distress,
- (4) retaliation under Cal. Gov't Code § 12940(h), and
- (5) violation of the Equal Pay Act.

CCSF has now moved for summary judgment on all five remaining claims.

## DISCUSSION

A.    Legal standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

Where the moving party will have the burden of proof at trial, it must affirmatively

demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v.Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324-25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c, (e)). But allegedly disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011). However, when a non-moving party fails to produce evidence rebutting defendants' showing, then an order for summary adjudication is proper. Nissan Fire, 210 F.3d at 1103 ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment.")

B. Analysis

As stated above, CCSF moves for summary judgment on each of plaintiff's five remaining causes of action. The court addresses each in turn.

**1. Negligent infliction of emotional distress (first cause of action)**

To establish a claim for negligent infliction of emotional distress, a plaintiff must set forth each of the elements of negligence: (1) duty, (2) negligent breach of duty, (3)

causation, and (4) damages. Friedman v. Merck, 107 Cal.App.4th 454, 463 (2003).

Plaintiff's negligent infliction of emotional distress claim is based on the allegation that defendant had a duty under California Education Code § 87732 to dismiss employees only for certain enumerated reasons under the statute, and that defendant breached that duty by dismissing him on grounds not supported by the statute.

Section 87732 provides as follows:

> No regular employee or academic employee shall be dismissed except for one or more of the following causes:
> (a) Immoral or unprofessional conduct.
> (b) Dishonesty.
> (c) Unsatisfactory performance.
> (d) Evident unfitness for service.
> (e) Physical or mental condition that makes him or her unfit to instruct or associate with students.
> (f) Persistent violation of, or refusal to obey, the school laws of the state or reasonable regulations prescribed for the government of the community colleges by the board of governors or by the governing board of the community college district employing him or her.
> (g) Conviction of a felony or of any crime involving moral turpitude.
> (h) Conduct specified in section 1028 of the Government Code.

Defendant argues that its reasons for terminating plaintiff's employment are consistent with section 87732. Specifically, defendant points to subsection (a), unprofessional conduct, and subsection (b), dishonesty, as bases for its decision. Among other things, defendant argues that plaintiff "attempted to convince" defendant that he had been cleared of any allegations while at LACCD, and falsely insinuated that he had a document showing that he had been cleared of wrongdoing. Dkt. 90 at 9. Defendant argues that it "rightly determined that in its assessment, [plaintiff] had been dishonest regarding important facts and had failed to live up to the professionalism standards that [defendant] expects of its administrators." Id. 90 at 10.

Plaintiff argues that defendant had "no jurisdiction to determine the veracity" of the LACCD allegations and "fabricated two reasons inconsistent with" section 87732. Dkt. 85 at 17, 18.

The court concludes that defendant's decision to terminate plaintiff's employment

8

was consistent with Cal. Educ. Code § 87732. As set forth above in the background facts regarding plaintiff's Skelly hearing, defendant's decision to dismiss plaintiff was based on his representations to Dianna Gonzales after she questioned him about the LACCD allegations. The Skelly officer found that there were reasonable grounds to conclude that plaintiff "did not truthfully represent" the facts when he suggested that he had been cleared of any allegations. Dkt. 77 at 166.

While it is true that the Skelly report used the term "lack of good judgment" rather than section 87732's exact phrasing of "unprofessional conduct," that is a technicality that does not alter the court's conclusion because the two are fairly synonymous given the facts of this case. Moreover, the Skelly report does use the term "dishonesty" exactly as set forth in section 87732, and dishonesty provides an independent basis for dismissing an employee under that section.

Accordingly, because plaintiff's dismissal was consistent with the grounds set forth in Cal. Educ. Code § 87732, plaintiff cannot raise a triable issue as to whether the dismissal constituted negligence for purposes of a negligent infliction of emotional distress claim. Defendant's motion for summary judgment as to plaintiff's first cause of action is therefore GRANTED.

**2.     Cal. Gov't Code § 54957 (second cause of action)**

Section 54957 requires a public entity to provide notice before conducting a closed session on charges brought against an employee. It states as follows:

> As a condition to holding a closed session on specific complaints or charges brought against an employee by another person or employee, the employee shall be given written notice of his or her right to have the complaints or charges heard in an open session rather than a closed session, which notice shall be delivered to the employee personally or by mail at least 24 hours before the time for holding the session. If the notice is not given, any disciplinary or other action taken by the legislative body against the employee based on the specific complaints or charges in the closed session shall be null and void.

The essence of plaintiff's claim is that defendant failed to provide proper notice of the December 13, 2018 closed session because notice was emailed to him rather than being personally served, and thus, any disciplinary action taken during that meeting is

9

null and void.

Defendant makes two arguments here. First, it argues that the notice requirements of section 54957 apply only when a board is hearing "specific complaints and charges," not when it is considering "the appointment, employment, evaluation of performance, discipline, or dismissal" of the employee. Dkt. 76 at 19.

Second, defendant argues that no disciplinary or other action was taken at the December 13, 2018 board meeting, and thus, there is nothing to nullify or void even if section 54957's notice requirement did apply. Dkt. 76 at 20-21.

Overall, the evidentiary record on this motion shows that no board action was taken as to plaintiff at the December 13 board meeting, and plaintiff cannot raise a triable issue of fact showing otherwise.

Specifically, the declaration of Dianna Gonzales, who was present during the session, states that there "were no reportable actions" taken by the board at the December 13 closed session. Dkt. 78, ¶ 2. The declaration also attaches minutes from the December 13 meeting, with a section at the beginning stating that "there were no reportable actions taken in closed session." Dkt. 78, Ex. A.

By contrast, the evidence shows that the board action terminating plaintiff's employment occurred at a later board meeting, on January 24, 2019. Attached to the Gonzales declaration are minutes from the January 24 meeting, which state that "the board approved by a vote of 7 to 0 to authorize the chancellor to terminate an associate vice chancellor for cause." Dkt. 78, Ex. B.

Overall, the Gonzales declaration, along with the other evidence in the record, including evidence showing that a Skelly hearing was conducted on January 9, 2019 and a Skelly report was subsequently submitted to CCSF on January 14, all support the conclusion that no board action was taken at the December 13 meeting, and thus there is nothing that could be declared "null and void." For that reason, plaintiff cannot raise a triable issue as to his section 54957 claim that any board action taken on December 13 should be declared null and void, and the court thus GRANTS defendant's motion for

1  summary judgment as to plaintiff's second cause of action.

2  The court need not address defendant's argument as to whether "specific complaints or charges" were heard at the December 13 meeting. Moreover, the court notes that, even if notice was required under section 54957, plaintiff's journal indicates that he did receive actual notice of the December 13 meeting before it occurred. See Dkt. 103-3 at 3.

### 3. Intentional infliction of emotional distress (third cause of action)

The elements of a cause of action for intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant, (2) extreme or severe emotional distress to the plaintiff, and (3) actual and proximate causation between the two. Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993). Extreme and outrageous conduct is conduct that is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Id. at 1001.

Defendant argues that, while plaintiff may disagree with the outcome of the disciplinary process, it was not extreme and outrageous conduct. Defendant points out that plaintiff was first placed on administrative leave, then participated in a Skelly hearing, and then received a notice of termination, which does not "remotely suggest" that he was subjected to the type of conduct that would support an intentional infliction of emotional distress claim. Dkt. 76 at 23.

Plaintiff responds by arguing that "the issuance of a public email pertaining to an employee's status of work constitutes extreme and outrageous conduct." Dkt. 85 at 24.

The court concludes that plaintiff cannot raise a triable issue as to his claim for intentional infliction of emotional distress. As defendant points out, plaintiff's disciplinary process was not "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Plaintiff was given written notices, he was placed on administrative leave, and he attended a Skelly hearing. Simply put, these were typical disciplinary processes, and not the type of "extreme and outrageous" conduct that would give rise to an intentional infliction of emotional distress claim. Moreover, as discussed above in the

11

context of plaintiff's first cause of action, the dismissal was consistent with Cal. Educ. Code § 87732 – which means it was not a wrongful termination, let alone extreme and outrageous conduct. Accordingly, defendant's motion for summary judgment is GRANTED as to plaintiff's third cause of action.

### 4. Retaliation under Cal. Gov't Code § 12940 (fourth cause of action)

To establish a prima facie claim of retaliation, plaintiff must prove that he (1) engaged in a protected activity, (2) suffered an adverse employment action, and (3) there was a causal nexus between plaintiff's protected activity and the adverse employment action. Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028, 1042 (2005). If a prima facie case is established, the burden shifts to defendant to set forth a legitimate, non-retaliatory reason for its actions; at that point, the plaintiff must produce evidence to show that the stated reasons were a pretext for retaliation. Bergene v. Salt River Project Agric. Improvement & Power Dist., 272 F.3d 1136, 1140–41 (9th Cir. 2001).

The essence of this claim is plaintiff's allegation that he engaged in protected activity by complaining about not receiving pay equal to Elizabeth Coria's, and that he was fired in retaliation for that complaint.

Defendant first argues that plaintiff cannot establish a prima facie case of retaliation because "there is no fact-based causal nexus" between plaintiff complaining about his pay and his termination. Defendant then argues that, even if plaintiff could make out a prima facie case, it has offered legitimate, non-retaliatory reasons for the dismissal, including that plaintiff "was not candid regarding having been cleared by LACCD and purportedly having documentation establishing as such." Dkt. 76 at 25.

Plaintiff's opposition brief does not address the issue of whether there was a causal nexus between the alleged protected activity and plaintiff's termination, nor does it address the issue of whether defendant's stated reasons were legitimate and non-retaliatory.

Overall, the court concludes that plaintiff cannot make out a prima facie case of retaliation, and even if he could, defendant has proffered legitimate, non-retaliatory

reasons for his termination.

First, as to the prima facie case, plaintiff has not pointed to evidence showing that the disciplinary proceedings were started in response to his request for higher pay. And second, as discussed above in the context of plaintiff's first cause of action, defendant's decision to terminate plaintiff was consistent with the grounds for dismissal set forth in Cal. Educ. Code § 87732, which supports the conclusion that the reasons were legitimate and non-retaliatory.

Accordingly, defendant's motion for summary judgment as to plaintiff's fourth cause of action is GRANTED.

### 5. Equal Pay Act (sixth cause of action)

The Equal Pay Act makes it illegal for an employer to "discriminate . . . between employees on the basis of sex by paying" disparate wages "for equal work on jobs the performance of which requires skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1).

Plaintiff alleges that he was paid a lower salary than a female counterpart, Elizabeth Coria.

CCSF's primary argument is that the Equal Pay Act permits pay disparities if they are based on "a seniority system," and that Coria was paid more than plaintiff because she had already been an employee with CCSF for over three years, and thus had seniority over plaintiff. Plaintiff does not address the seniority argument in his opposition.

The Equal Pay Act does indeed permit unequal wages under certain circumstances, including "a seniority system." 29 U.S.C. § 206(d)(1). Defendant has submitted undisputed evidence showing that Coria had already been a CCSF employee for three years before she was hired to perform the same role as plaintiff. See Dkt. 77 at 197-99. Thus, within the CCSF system, Coria had seniority, and it was permissible for her to receive a higher salary than plaintiff. And, as mentioned above, plaintiff does not address the seniority argument in his opposition brief.

The court concludes that plaintiff has not raised a triable issue as to his Equal Pay

Act claim.  Accordingly, the court GRANTS defendant's motion for summary judgment as to the sixth cause of action.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (Dkt. 76) is GRANTED as to all five of plaintiff's remaining claims.

As a final matter, the court notes that defendant filed a motion to seal plaintiff's journal.  See Dkt. 103.  Defendant's motion states that sealing is sought based on plaintiff's designation of the journal as confidential under the stipulated protective order.  Dkt. 103 at 2-3.

Under Civil Local Rule 79-5(e), when a party files a motion to seal based on another party's confidentiality designation, the designating party must then file a declaration within four days establishing that the material is sealable.  See Civil L.R. 79-5(e)(1).

Defendant's motion to seal was filed on May 7, 2021.  Plaintiff's supporting declaration was thus due on May 11, 2021.  As of the date of this order, plaintiff has not yet filed the supporting declaration required by Rule 79-5(e)(1).  The court gives plaintiff until **Monday, May 24, 2021**, to file a declaration in support of sealing as required by the Local Rules, otherwise the motion will be denied and the journal will be filed on the public docket.

**IT IS SO ORDERED.**

Dated:  May 17, 2021

                                          /s/ *Phyllis J. Hamilton*
                                  PHYLLIS J. HAMILTON
                                  United States District Judge